**CHARACTER AND FITNESS COMMITTEE OFFICE OF BAR ADMISSIONS, Movant.**

v.

**Lincoln H. JONES, Respondent.**

**No. 2000–SC–0585–OA.**

Supreme Court of Kentucky.

Dec. 20, 2001.

---

**28.** *Dean v. Commonwealth, supra* note 19 at 903.

**29.** Ky., 50 S.W.3d 204 (2001).

### OPINION AND ORDER

LAMBERT, Chief Justice.

On October 1, 1997, Respondent, Lincoln Humphrey Jones, applied to sit for the February 1998 Kentucky Bar Examination. While processing his application, the Committee became concerned with Respondent's existing student debt status, and, on April 22, 1998, Respondent entered into a Consent Agreement which would allow him the conditional privilege to practice law in the Commonwealth once he passed the Kentucky Bar Examination. The agreement provided:

### CONSENT AGREEMENT

I, Lincoln Humphrey Jones, hereby agree to the following condition(s) set forth in the Consent Agreement for Conditional Admission to the practice of law in the State of Kentucky. Upon successfully passing the Kentucky Bar Examination, I will abide by the terms of this agreement.

1. During the period of conditional admission, I shall:

(a) Submit proof of payment or, during periods of non-payment submit certification of compliance, on a monthly basis on the William D. Ford consolidation loan.

(b) Provide proof of payment on my William D. Ford Consolidation loan for not less than 12 payments in amounts acceptable to the William D. Ford Loan Program.

2. The Character & Fitness Committee shall monitor the conditions set forth in this Consent Agreement. Any additional costs incurred in the process of monitoring the conditions of this agreement shall be paid by the applicant pursuant to Rule 2.020(6). If I relocate outside of the State of Kentucky during the period of this agreement for any reason, I will continue to abide by the terms of this agreement.

### ACKNOWLEDGMENT

I, Lincoln Jones, HAVE READ THIS Consent Agreement and fully understand its contents. I have sought the advice of an attorney or have freely waived the necessity of seeking such counsel prior to executing this Agreement. I hereby freely consent to the terms and conditions contained herein.

/s/ Lincoln Jones

The Committee mailed the agreement to Respondent, and the accompanying cover letter explained:

Attached is the revised Conditional Agreement. Following your departure it was felt that clarification was needed to indicate that the Committee requires: 1). a twelve month period of actual payment in amounts mutually agreed to be-

tween you and the William D. Ford Loan institution and, 2). that any periods of non-payment be pursuant to a process provided for by the Ford Consolidation loan program rather than as a default situation.

Respondent successfully passed the Kentucky Bar Examination and was thus conditionally permitted to practice law in the Commonwealth under this agreement.

On May 31st, July 1st, July 26th, September 7th, October 6th, November 10th, and December 4th of 1998, and January 4th and February 1st of 1999, Respondent mailed substantially identical letters to the Committee Director, each of which contained the very same information. In each letter, Respondent explained that he had not made a payment for that month to the William D. Ford Program, but that no payment was due for that month:

In compliance with my understanding of the terms of my conditional admission agreement, I certify that the following facts are true and correct to the best of my knowledge:

1. This is my [1st, 2nd, 3rd ...] statement, which reports the status of my William D. Ford Consolidation Loan for [month, year]

2. This month I have paid (or will pay prior to the close of the month) $0.00 toward my William D. Ford Consolidation loan.

3. The current status of my Ford Consolidation loan is "Forbearance".

4. The payment described in Paragraph 2, above, is consistent with my understanding of the Ford Program's interpretation of compliance with its regulations.

Respectfully submitted

/s/ Lincoln Jones

Under penalties of perjury, I declare that the facts stated in the foregoing statement are complete and true to the best of my knowledge and belief.

/s/ Lincoln Jones

In the September 7, 1998 letter, paragraph 3 read:

3. The current status of my Ford Consolidation loan is 'Forbearance'. (However, the status will change to "In School Deferment" retroactive to August 26th as soon as the paperwork gets completed.)

Paragraph 3 of each of the five subsequent letters read, "3. The current status of my account with the Ford Program is 'In–School Deferment'."

On February 21, 1999, the Committee Director wrote Respondent regarding the fact that Respondent had yet to make any payments on the loan and requested an explanation for, and documentation of, the basis for the current "In–School Deferment." On April 5, 1999, Respondent delivered a letter to the Committee Director which provided this information.

■ The Character and Fitness Committee of the Office of Bar Admissions ("Committee") recommends, pursuant to Supreme Court Rule 2.042,[1] that this

---

1. SCR 2.042. Conditional admission.
   (1) The Committee may, as a part of its certification process, require that an applicant enter into an agreement as a condition of their admission to the Bar. The conditions of admission as determined by the Character and Fitness Committee shall be set forth in a written agreement with specific terms and conditions.

These terms and conditions shall be monitored by the Committee or its agents or designees.
   (2) Upon failure to comply with the terms and conditions of the agreement, the Committee may:
   (a) extend the term and impose additional condition(s).

Court revoke Respondent's license to practice law because it alleges that Respondent has failed to comply with the terms and conditions of a conditional admission agreement. Respondent maintains that he complied with the terms of the agreement during its term, but that he is no longer subject to the terms of that agreement. We agree that Respondent's license to practice law should be revoked.

■ We understand the Committee's conclusion and concern that one unable to manage his own debts may present a risk to a fiduciary relationship, nevertheless SCR 2.042 does not authorize the Character and Fitness Committee, the Kentucky Bar Association or this Court to assume *sua sponte,* the role of a collection agency for student loan creditors. The creditors have adequate remedies at law.

However, Respondent agreed to make payments, and he has not made any payments. SCR 3.3(a)(2) provides that a lawyer shall not knowingly fail to disclose a material fact to the tribunal when disclosure is necessary to avoid a fraud being perpetuated upon the tribunal. As an arm of this Court, the Character and Fitness Committee is a tribunal. Respondent and the Committee dealt at arms length and reached an agreement susceptible to the reasonable interpretation that Respondent would make some payments on his student loan within the next twelve months.

Specifically, paragraph (b) of the agreement required Respondent to make not less than twelve payments in amounts "acceptable to the William D. Ford Loan program." Respondent attempts to satisfy the above by stating he has paid $0.00 toward the loan. $0.00 is not an amount. $0.00 is nothing.

Respondent's actions were patently evasive and clearly demonstrate that Respondent had no intention of making actual payments on his debts. Respondent was allowed to practice law in Kentucky only if he took steps to pay off his substantial loan balance. While the nature of this debt may not have been a legitimate concern of the Character and Fitness Committee, he still agreed to make payments. Since Respondent has chosen to artfully misconstrue the terms of the conditional agreement in lieu of making actual payments, this Court hereby revokes his license to practice law, because of dishonest statements which demonstrate a lack of candor toward a tribunal.

What Respondent fails to recognize is that it is not solely his failure to honor his agreement to pay a financial obligation that calls his character into question, but also his absurd and disingenuous argument that he actually *was* paying. As stated in *Bays v. Mahan,* Ky.App., 362 S.W.2d 732, 733 (1962), "[One of] the common and fundamental rules of construction of contracts are that the words shall be accorded their ordinarily used meaning unless the context requires otherwise[.]" "Pay" is defined in *Webster's New World Dictionary* as:

1. To give to (a person) what is due, as for goods received, services rendered, etc.; 2. To give (what is due or owed) in return, as for goods and services; 3. To make a deposit or transfer of money; 4. To discharge or settle (a debt, obligation, expenses, etc.) by giving something in return.

WEBSTER'S NEW WORLD DICTIONARY 1044 (2nd ed.1982). Respondent has satisfied no definition of the word

(b) recommend to the Court revocation of license.
(3) All information relating to conditional admission of an applicant or an attorney shall remain confidential in accordance with SCR 2.120.

"pay." Instead he engaged in double speak and meta talk to mock his written agreement concerning a just obligation.

Such actions give rise to the worst of the public's suspicions about lawyers. As noted in a recent edition of the Georgetown Journal of Legal Ethics:

> Many members of the legal profession who adhere to ethical standards deserve respect for the attainment of a Juris Doctorate. . . . 'Lawyer' should bring to mind words like responsible, hard-working, truthful, faithful, defender of rights, and problem-solver, not words like shark, vulture, ambulance chaser, slimy, sneaky, and so forth. The word 'lawyer' should command respect.

Elizabeth Gepford McCulley, "School of Sharks? Bar Fitness Requirements of Good Moral Character and the Role of Law Schools," 14 Georgetown Journal of Legal Ethics 839, 841 (2001). Respondent's actions have brought nothing but disrespect to the legal profession.

Respondent knew that the conditional agreement required him to make actual monthly payments on his loan for a period of twelve months, not merely to comply with the Ford Program's regulations by maneuvering his loan status to "forbearance" or "deferral" during that time period. The cover letter which the Committee mailed to Respondent makes these terms abundantly clear. Instead of abiding by his agreement, Respondent attempted to manufacture a fictitious payment on this loan during his monthly reports to the Committee by stating: "This month I have paid. . . . $0.00 toward my William D. Ford Consolidation loan." It is absurd that such a bald-faced attempt to exploit the semantic flaws present in the Conditional Agreement could be construed as anything other than a direct violation of the Agreement.

Furthermore, this is not the first case of its kind in which this Court has denied the right to practice law to a potential attorney who was dishonest in dealing with his debts. In *Baldridge v. Kentucky Bar Ass'n*, Ky., 980 S.W.2d 558 (1998), we faced a similar situation in which an attorney who was applying for reinstatement was party to a conditional agreement that included the payment of debt. Like Respondent, he too wished to play semantic games in the hopes of covering up his refusal to make agreed payments on a debt. In that case, we denied the petition for reinstatement, and stated:

> The order of disbarment requires, in relevant part, that movant not file an application for reinstatement 'unless he presents satisfactory evidence that he has *satisfied* the financial obligations to *his* creditors who are identified on the attached bankruptcy schedules.' Movant claims that, when the disbarment order was presented to him for his approval, he did not understand this language to mean that he had to "pay off" all his debts. Furthermore, he claims that this language only requires him to satisfy his personal debts and not his corporate creditors. . . . The simple fact remains that movant still has unpaid debts incurred by his pre-disbarment activities. . . The compromise he has made in satisfaction of some of the other debts do not meet the terms of the disbarment order, and nothing in the record supports an inference that movant has achieved the level of financial stability that would inspire confidence in his reinstatement effort. *Id.* at 559.

While we did state in the above case that those who had been subject to discipline previously faced more scrutiny than the first time applicant, it is important to note that the movant in *Baldridge, supra,* had at least made *some* payment on his debts, and did not, as Respondent has attempted

to do in this case, ignore the agreement in its entirety.

Notwithstanding Respondent's protests, we have no doubt that he simply chose not to pay off his debts, despite his obligation to do so under the Agreement. Additionally, Respondent's use of cunning word games in his attempt to evade his responsibilities casts the entire profession in a bad light. For these reasons, Respondent's license to practice law in the Commonwealth of Kentucky is revoked.

LAMBERT, C.J., GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER, J.J., concur.

COOPER, J., dissents in a separate opinion.

KELLER, J., dissents in a separate opinion.

ENTERED: December 20, 2001.

/s/ Joseph E. Lambert
Chief Justice

COOPER, Justice, dissenting.

Like the majority, I do not interpret SCR 2.042 as authorizing the Character and Fitness Committee, the Kentucky Bar Association, or this Court to assume, *sua sponte*, the role of collection agency for student loan creditors. What's next? Home mortgages? Car loans? Credit card balances? The creditor in this case, the William D. Ford Consolidation Program, is apparently less concerned about the status of this debt than is the majority of this Court; in fact, the Ford Program has agreed to a series of forbearances and in-school deferments that have temporarily relieved Respondent of any payment obligation. If the creditor is not demanding payment, why should we? Implicit in this agreement is an assumption that any attorney with substantial unpaid debts is *prima facie* unfit to practice law. I find that assumption untenable. One can only wonder how a young law graduate with poor parents and a substantial student loan debt is expected to earn the money to pay that debt if denied the opportunity to practice the profession which was the *raison d'etre* for the incurrence of the debt.

Nevertheless, Respondent did enter into an agreement, albeit one of adhesion, and has not sought relief from the obligations recited therein. At worst, we should enforce the agreement as written, *viz:*

During the period of conditional admission, I shall:

(a) Submit proof of payment *or, during periods of non-payment submit certification of compliance,* on a monthly basis on the William D. Ford consolidation loan. [Emphasis added.]

(b) Provide proof of payment on my William D. Ford Consolidation loan for not less than 12 payments in amounts acceptable to the William D. Ford Loan program.

Paragraph (a) requires Respondent to submit either proof of payment or proof of compliance on a monthly basis. During the period in question, Respondent made no payments but submitted proof of compliance, *i.e.*, that payments were not required because the creditor had classified his loan status as either "forbearance" or "in-school deferment." Paragraph (b) requires Respondent to make not less than twelve payments in amounts "acceptable to the William D. Ford Loan program." The paragraph does not require the payments to be made within any specified period of time or during consecutive months. Nor does the agreement state an amount to be paid, but only that payments be "in amounts acceptable to the William D. Ford Loan program." To date, payments "acceptable to the William D. Ford Loan program" have been zero. Obvious-

ly, Respondent is in compliance with the agreement as written.

Yet, for reasons that I find unfathomable, the majority has decided to revoke Respondent's right to practice law because he has failed to make payments that are required by neither his creditor nor his agreement with the Character and Fitness Committee. Remarkably, the majority even blames Respondent for the fact that the agreement does not require him to make payments that are not required by his creditor: "It is absurd that such a bald-faced attempt to exploit the semantic flaws present in the Conditional Agreement could be construed as anything other than a direct violation of the Agreement." (Slip op. at 6–8.) (!) This unambiguous agreement was drafted not by Respondent but by the Character and Fitness Committee. Fundamental fairness requires that its terms be enforced as written, not as we might wish they had been written.

Accordingly, I dissent.

KELLER, Justice, dissenting.

While I agree in principle with the majority's conclusion that Respondent's lack of candor and "absurd and disingenuous argument that he actually *was* paying"[1] raise substantial questions about his fitness to practice law in the Commonwealth of Kentucky, this matter is not a disciplinary case, and no alleged violations of the Kentucky Rules of Professional Conduct are properly before this Court. Instead, this case presents *only* an SCR 2.042[2] conditional admission issue, and our *only* task is to determine whether Respondent has breached the terms of his Conditional Admission Agreement ("Agreement"). While I believe this Court has a duty to enforce strictly the written terms of such an agreement, I cannot agree with the majority's interpretation.[3] As I interpret the Agreement, Respondent remains conditionally admitted to practice law in Kentucky until Respondent demonstrates twelve (12) actual payments towards his student loan debt. While I would not revoke Respondent's license to practice law at this time, I believe this Court should modify the terms of the Agreement to expedite Respondent's performance of his obligations.

The Respondent and the Committee dispute the terms of the Agreement itself, and I believe this Court must answer two (2) interpretive questions to resolve that dispute: (1) does the Agreement require twelve (12) actual payments, or did Respondent satisfy its conditions by certifying that no amounts were then due on the

---

**1.** Majority Opinion at 31.

**2.** SCR 2.042. Conditional admission.

(1) The Committee may, as a part of its certification process, require that an applicant enter into an agreement as a condition of their admission to the Bar. The conditions of admission as determined by the Character and Fitness Committee shall be set forth in a written agreement with specific terms and conditions. These terms and conditions shall be monitored by the Committee or its agents or designees.

(2) Upon failure to comply with the terms and conditions of the agreement, the Committee may:

(a) extend the term and impose additional condition(s).

(b) recommend to the Court revocation of license.

(3) All information relating to conditional admission of an applicant or an attorney shall remain confidential in accordance with SCR 2.120.

*Id.*

**3.** *See* Majority Opinion, *supra* note 1 at 31 ("Respondent and the Committee dealt at arms length and reached an agreement susceptible to the reasonable interpretation that Respondent would make some payments on his student loan within the next twelve months.").

outstanding loan balance? and (2) is the Agreement itself limited to a term of twelve (12) months duration? I disagree with the majority's self-labeled "reasonable interpretation," [4] and, after examining the language of the Agreement itself and the correspondence which accompanied it, I interpret the Agreement to require Respondent to make twelve (12) actual payments on his loan. However, I can find no time limitation within which Respondent must make these twelve (12) payments, and I thus interpret the Agreement as open-ended and ongoing.

Although there is no conjunction between Conditions 1(a) and 1(b) in the Agreement itself, I find the fact that the Agreement sets out these conditions in separately identified paragraphs strong evidence that those conditions are independent requirements—monthly proof of payments or other compliance *and* twelve (12) actual payments in amounts acceptable to the loan program. In addition, the Committee Director's April 15, 1998 letter, which accompanied the Agreement signed by Respondent, provides further evidence of the nature of the Agreement by phrasing the Agreement's terms as separate obligations: "[T]he Committee requires: 1). a twelve month period of *actual payment* in amounts mutually agreed to between you and the William D. Ford Loan institution *and*, 2). that any periods of non-

payment be pursuant to a process provided for by the Ford Consolidation loan program rather than as a default situation." As Respondent admits that he has made no actual payments,[5] Respondent has not *yet* complied with this aspect of the Agreement.

I use the word "yet" for an important reason—both the Respondent and the majority are mistaken in their belief that the Agreement contains a twelve (12) month time limitation. The Agreement contains no such limitation. It uses the language "twelve payments" not "twelve months," and, in fact, the Agreement specifically provides for a period of conditional admission exceeding twelve (12) months by permitting periods of non-payment if Respondent certifies compliance with the loan program. As Respondent has not yet demonstrated that he has made twelve (12) payments, the Agreement remains in effect until he does so.

As the written Agreement does not include a time frame in which Respondent must complete these payments, I cannot conclude that Respondent has failed to comply with Condition 1(b), and I decline to follow the Committee's recommendation to revoke Respondent's license to practice law.[6] However, I agree with the majority that the underlying factual background in this case suggests a disturbing pattern of

---

4. *Id.* at 31.

5. I agree with the majority's disparaging assessment of Respondent's contention that he made a "payment" each month in the amount of $0.00.

6. I would note, however, that even under my interpretation of the Agreement, Respondent has failed to abide by the terms of Condition 1(a). Respondent's monthly (and later quarterly) certifications technically conformed to the terms of Condition 1(a) of the Agreement. However, as the Agreement is limited by no term and will conclude only upon Respon-

dent's performance of his obligations under the Agreement, Respondent has a continuing obligation to certify compliance during periods of non-payment, and Respondent has failed to comply with Condition 1(a) since February of 1999 when he last submitted his proof of compliance with the loan program. Movant has not recommended, however, that this Court revoke Respondent's license to practice law because of a failure to comply with Condition 1(a), and bases its recommendation solely upon Respondent's failure to make the payments required by Condition 1(b).

Respondent's attempts to circumvent his ongoing obligations under this Agreement. Accordingly, I believe that Respondent's patent defiance constitutes just cause for this Court to impose additional conditions upon Respondent's ongoing conditional admission to ensure that Respondent does not linger in "technical compliance" ad infinitum without any means for the Committee to verify this status.[7]

While I would deny the Committee's recommendation that this Court revoke Respondent's license to practice law, I would, instead, order the following:

(1) Respondent remains subject to the Conditional Agreement until he has made twelve (12) actual payments on his William D. Ford Consolidation Loan in accordance with a repayment plan and his previous representations that his annual payments would account for approximately twenty percent (20%) of his annual salary;

(2) Respondent must expeditiously begin actual payments on his outstanding student loan balance as specified in (1) above and must complete the last of these twelve (12) actual payments within eighteen (18) months of today's date;[8]

(3) Within thirty (30) days of today's date, Respondent must furnish the documentation previously requested by the Committee and must facilitate the Committee's responsibility under Condition 2 of the agreement to "monitor the conditions set forth in this Consent Agreement" by timely furnishing documentation in response to future requests;

(4) Pursuant to SCR 2.042(2), the Committee shall continue to monitor Respondent's compliance with both the original

terms of the Consent Agreement and the additional conditions added by this Court.

---

7. *See Faust v. Kentucky Bar Association,* Ky., 929 S.W.2d 185 (1996) (granting conditional reinstatement with specified conditions).

8. Respondent has already had over three (3) years to make the payments required by the agreement, and I believe it more than reasonable to expect him to meet his obligations in five (5) years.