# Supreme Court of Kentucky



DATE 5/6/20

2019-SC-000413-OA

CHARACTER AND FITNESS COMMITTEE          MOVANT
OF THE KENTUCKY OFFICE OF BAR
ADMISSIONS


V.          IN SUPREME COURT


BRADLEY STUART SOWELL          RESPONDENT


## OPINION AND ORDER


Under SCR[1] 2.042(1), applicants for admission to the Bar may be subject to a written agreement with the Character and Fitness Committee imposing conditions on the applicant's license to practice. Upon violation of the terms and conditions of the agreement, the Committee has two options: extend the terms and impose additional conditions or recommend to this Court revocation of the member's conditional license. In this case, the Committee has recommended revocation. Upon consideration of the record, we accept the recommendation of the Committee and Order the revocation of Bradley Stuart Sowell's license to practice law.

---

[1] Kentucky Rules of the Supreme Court.

1

## I.    Factual and Procedural Background.

Sowell[2] attended Mississippi College School of Law from 2008 to 2011, and while there entered into a treatment and monitoring agreement with the Mississippi Lawyers and Judges Assistance Program. Upon graduation, he applied for admission to the Kentucky bar. According to Sowell's response, he had pre-2008 "disease and alcohol-related criminal charges."

The record reflects that Sowell and the Committee entered into multiple agreements governing his conditional admission to practice and his substance abuse issues: 1) Consent Agreements in May and June 2011;[3] 2) Supplemental Consent Agreement signed January 22, 2015; 3) Second Supplemental Consent Agreement signed January 11, 2016; 4) Interim Resolution Agreement dated June 13, 2016; and 5) Third Supplemental Consent Agreement signed February 9, 2017. The Interim Resolution Agreement reflects that Sowell was represented by counsel at that time. Suffice to say, each agreement required Sowell to abstain from alcohol and the use of unprescribed controlled substances, and to be monitored by the Kentucky Lawyer's Assistance Program ("KYLAP").

---

[2] Sowell's bar address is 941 Lehman Ave., Suite 201, Bowling Green, Kentucky 42101-4974.

[3] Prior to sitting for and passing the July 2011 bar examination, Sowell signed two Consent Agreements, one dated May 6, 2011, and the other dated June 6, 2011. The terms are slightly different. The apparent need for the two agreements was that the first required Sowell to remain in Kentucky while under its terms, but Sowell advised the Committee of his intent to return to Mississippi. As a result, the June 2011 agreement superseded the May 2011 agreement.

2

The Committee's Recommendation of Licensure Revocation details Sowell's history of Consent Agreement violations and the extension and additional conditions of each subsequent agreement. Pertinent to our analysis, in the preamble to the Third Supplemental Consent Agreement, Sowell acknowledged execution of the prior Consent Agreements, repeated violations of those agreements, being an active alcoholic during the periods covered by the agreements, and completion of a residential treatment program. The terms of the Third Supplemental Consent Agreement provided:

> 1. Mr. Sowell admitted, acknowledged and has been properly found in violation of his previous CA's[4].
>
> . . . .
>
> 3. The Committee extends this Third Supplemental Conditional admission to the Practice of law in the Commonwealth of Kentucky and **Mr. Sowell accepts the terms of the Agreement detailed below and commits to strictly abide by the terms of this agreement** for a five year (5 year) period, with routine monitoring by the Kentucky Lawyer's Assistance Program ("KYLAP") and at least quarterly reporting to the Committee.
>
> 4. During the period of conditional admission Mr. Sowell agrees that if not already accomplished, upon receipt of this Agreement, he will contact KYLAP immediately and enter into an additional five year Supervision Agreement with KYLAP. That Agreement and this one shall run concurrently with each other with a beginning date of February 9[], 2017.
>
> 5. **Mr. Sowell specifically agrees to abstain from alcohol and the use of controlled substances** except as prescribed by a duly licensed and currently treating physician.
>
> 6. KYLAP shall monitor the conditions set forth in the Supervision Agreement and the Director will report Mr. Sowell's compliance with the Supervision Agreement to the Character and Fitness Committee on a quarterly basis with a final report to the

---

[4] Consent Agreements.

3

Office of Bar Admissions upon successful completion of the monitoring period.

7. Mr. Sowell will continue random alcohol and drug testing, including but not limited to: observed urine testing, ETG testing and drug panels when and as directed by KYLAP.

8. **Any positive test result, any deviation from the terms of KYLAP's Supervision Agreement or this Agreement, including failure to maintain routine and regular contact with KYLAP's assigned monitor shall be immediately reported to the Committee by Mr. Sowell** and by KYLAP.

9. **All parties acknowledge and are aware that the Committee is very concerned about Mr. Sowell's previous non-compliances and has specified that this Third Supplemental Consent Agreement is a "Zero Tolerance" Agreement and that failure to comply with any of its terms or with the terms and conditions of the KYLAP Supervision Agreement will result in immediate reporting to the Committee and the likelihood of severe sanctions including suspension and/or revocation of his license to practice law.**

. . . .

11. **During the period of conditional admission, Mr. Sowell agrees to provide to the Character and Fitness Committee information regarding any incident or occurrence that could be considered adverse to a finding of good moral character and fitness for a practicing attorney, or that would change any information provided with or following the filing of his application for admission to the Bar** (for example: change of employment, traffic citations, arrests, disposition of pending litigation, **drinking alcohol or taking prohibited drugs, etc.**).

(emphasis added).

By letter dated June 20, 2019, KYLAP's Director reported Sowell's non-compliance to the Office of Bar Admissions. Specifically, a random drug/alcohol test conducted on May 3, 2019 resulted in "a dilute."[5] A follow-

---

[5] A dilute urine specimen shows a creatinine level below a standard level of 20 mg/dL. Sowell's May 3 urine test showed a creatinine level of 15.8 mg/dL. A common cause of a dilute specimen is the consumption of large amounts of water in an effort to hide drug or alcohol use. Occupational Medicine, Baptist Health,

up blood test on May 9, 2019, was unable to be conducted because, as Sowell reported to KYLAP, Sowell passed out when the needle was inserted. A follow-up urine screen on May 22 resulted in a negative test. A subsequent hair follicle test taken on June 4 was, however, positive for cocaine, and indicated alcohol use as well. Additionally, Sowell did not report the positive hair test to KYLAP or to his KYLAP monitor, as required by his KYLAP Supervision Agreement. The letter reporting non-compliance was copied to Sowell and his counsel.

On June 20, by U.S. Mail and by email, with an emailed copy to counsel, the Committee, through Elizabeth S. Feamster, Director of the Office of Bar Admissions and General Counsel to the Committee, advised Sowell of the KYLAP report of non-compliance, and reminded him of the terms of strict compliance "with no leniency based on [his] long history of previous non-compliances and addiction." The letter advised that the Committee was meeting on the following Tuesday, June 25, and that it would add Sowell to the agenda that afternoon. Ms. Feamster's letter further advised Sowell, that "[t]o be clear, this is in the nature of a Show Cause hearing and you should be prepared to explain why you believe the Committee should not recommend to the Supreme Court suspension of your license to practice law for non-compliance with the terms of your conditional admission."

---

https://www.baptisthealth.com/pages/services/ occupational-medicine/forms-and-resources.aspx (last visited Feb. 26, 2020).

At the Show Cause Hearing, Sowell appeared with counsel. By Affidavit, Grant Helman, Chairman of Committee, stated Sowell admitted to binge drinking on Derby weekend because his girlfriend of six years left him. Sowell had no recollection of cocaine use but did not dispute its use. He further acknowledged not reporting his test results to his KYLAP monitor, his counsel, KYLAP or the Committee as required.

In response to the Committee's Recommendation of Licensure Revocation, Sowell admits to a relapse from May 4 to 5, 2019, after his girlfriend broke off their relationship, and to non-reporting. In mitigation of revocation, Sowell argues that he had achieved 39 months of sobriety before May 2019, that he subsequently entered an Intensive Outpatient Program ("IOP") and has been attended 12-step meetings. Sowell also presents testimony as to the nature of addiction, recovery and relapse from Yvette Hourigan, KYLAP's Director, from Vaas Jackson, one of Sowell's therapists at his IOP, and from Dr. Grayson Grau, his treating psychiatrist.

## II.    Analysis.

SCR 2.042 was promulgated by this Court in 1996 and became effective in 1997. Relatively few cases have discussed its application to a bar applicant who, as a condition of admission, is placed under a consent agreement such as Sowell. In fact, our review discloses one such case, *Character & Fitness Comm. Office of Bar Admissions v. Jones*, 62 S.W.3d 28 (Ky. 2001). In *Jones*, we held that Consent Agreements are construed like all contracts. *Id.* at 31. And "one of the common and fundamental rules of construction of contracts [is] that the words shall be accorded their ordinarily used meaning unless the context

requires otherwise." *Id.* While we noted that neither the Committee, the Kentucky Bar Association, nor this Court is to act as a collection agency, Jones had, nevertheless, entered into an agreement to make the loan payments at issue. *Id.*

In this case, the Third Supplemental Consent Agreement is explicit. Sowell admitted prior relapses and failure to abide by the terms of multiple earlier Consent Agreements. The Committee had, as permitted by SCR 2.042(2)(a), extended the term and imposed additional conditions, forbearing to recommend revocation for violations of the earlier agreements and working with Sowell over eight years to be a sober member of the bar. Sowell, in this final agreement, agreed to "strictly abide" by its terms, not to consume alcohol or controlled substances, and to self-report violations both to KYLAP and the Committee. Sowell and the Committee further expressly acknowledged and agreed that the Third Supplemental Consent Agreement was a "Zero Tolerance Agreement" and violations would result in "the likelihood of severe sanctions including suspension and/or revocation of his license to practice law." Sowell admitted violating the terms of the Agreement. To be clear, the violation was not for what might be considered a minor breach, such as a speeding ticket. The violation was for what must be considered the primary reason Sowell has been under conditional admission since 2011.

Sowell complains of the short time period he was given to respond and appear to the Committee's show cause notice. While we might agree that the time period was short, we note that both he and his counsel were provided with the June 20 KYLAP notice of non-compliance and the Committee's letter of the

same date. The record contains no indication that Sowell requested additional time to prepare prior to the June 25 hearing. Furthermore, Sowell was certainly aware that his behavior was under scrutiny, as shown by the KYLAP notice detailing Ms. Hourigan's interactions with Sowell, especially after the May 3 dilute urine sample.[6]

Sowell moved for an order requesting we remand this matter to the Committee for a formal hearing. The purpose of such a hearing is unclear, since Sowell has admitted violating the explicit terms of the Third Supplemental Consent Agreement. The only purpose would seem to permit Sowell to introduce evidence that he has been compliant in the intervening time since his last violation.

The Committee's Recommendation of Licensure Revocation establishes that Sowell failed repeatedly to abide by the terms of his conditional admission. Sowell's response and exhibits, while showing progress in his attempt to achieve lasting sobriety, do nothing to contradict the Committee's findings of noncompliance. Sowell was given repeated opportunities to conform his behavior to the standards required of those seeking admission to the bar but failed to meet those standards. Accordingly, this Court finds that Respondent's conditional admission to practice law in Kentucky should be revoked.[7]

---

[6] We further note that perhaps Sowell has been disingenuous with the Court since he admits to a May 4-5 alcohol binge, but his dilute urine sample was taken the day before, May 3.

[7] Contrary to Sowell's assertion, revocation in this instance is not the attorney practice of law "death penalty." Unlike a fifth failure to pass the Kentucky bar exam, SCR 2.080(4), or permanent disbarment, SCR 3.380(1), Sowell is eligible to apply for

However, the Court also finds that Respondent's positive strides toward lasting sobriety, including regular attendance at 12-step meetings and maintaining complete compliance with the requirements of his KYLAP monitoring agreement since his last violation, suggest that a two-year waiting period to apply for reinstatement is appropriate under these circumstances.[8] SCR 3.510.

**ORDER**

Accordingly, the Court finds that the Committee's Recommendation for Licensure Revocation should be GRANTED and that the license of Bradley Stuart Sowell to practice law in Kentucky should be, and hereby is, REVOKED, effective immediately. Further, Sowell SHALL NOT SUBMIT a new application for admission to the Kentucky Bar for a period of two years from the date of this Order.

Sowell's motion to remand this matter to the Committee for a formal hearing is DENIED.

Hughes, Keller, Lambert, Nickell, VanMeter and Wright, JJ., sitting. All concur. Minton, C.J., not sitting.

ENTERED: March 26, 2020.

_____
CHIEF JUSTICE

---

future reinstatement. SCR. 2.042(5), 3.510. We note this possibility because we are hopeful this will encourage Sowell to maintain his path of recovery.